## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| RON RUTLEDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| BOARD OF COUNTY COMMISSIONERS | ) | **JURY TRIAL DEMANDED** |
| OF JOHNSON COUNTY, KANSAS, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S COMPLAINT

**COMES NOW** Plaintiff Mr. Ron Rutledge ("Plaintiff" or "Mr. Rutledge"), by and through his counsel, and for his complaint against Defendant Board of County Commissioners of Johnson County, Kansas ("Defendant," "Johnson County" or "the County") states and alleges as follows:

### NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1.  Plaintiff brings this action against Defendant Johnson County for discriminatory, retaliatory, and other unlawful conduct in employment pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*. ("ADA"), the Family and Medical Leave Act, 29 U.S.C. §§ 2601-54 ("FMLA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and Kansas common law, as a result of Defendant: a) unlawfully and repeatedly subjecting Mr. Rutledge to ongoing discrimination, retaliation, harassment, and a hostile environment due to his disabilities – *brought about due to workplace injuries*; b) retaliating against him for exercising his related ADA, FMLA, and workers' compensation rights; c) discriminating and retaliating against him for seeking related accommodations, leave, care, and treatment; d) retaliating against him for reporting repeated

unlawful conduct of his colleagues and the County; e) retaliating against him for testifying against the County and certain of its managers and employees in earlier litigation involving like and similar unlawful conduct as in this case; f) blatantly ignoring and breaching the discrimination, harassment, and non-retaliation and other agreements and promises it is bound by and set forth in its written polices; g) knowingly, willingly, wantonly, and maliciously subjecting Plaintiff to extreme fear, humiliation, embarrassment, anxiety, and distress due to such; and, h) engaging in other related unlawful acts, conduct, and practices.

2.   Kansas law prohibits employers from interfering with and/or retaliating against their employees who exercise their lawful workers' compensation rights - recognizing such to be in clear contravention of public policy; and, as an exception to the at-will employment doctrine, an employee so discriminated or retaliated against may bring suit against their employer.

3.   Plaintiff alleges that he filed a claim for workers compensation benefits after sustaining an injury arising out of and during the course of his work with the County; the County had knowledge of this injury and Mr. Rutledge's related claim; the County terminated Plaintiff's employment; and, there is a causal connection between the protected activity or injury and the termination.

4.   Plaintiff further alleges that Defendant is liable under the ADA, which: 1) prohibits discrimination against any qualified individual with a disability by an employer, *inter alia*, because of the individual's disability, record of disability, or perceived disability; 2) requires the employer to provide reasonable accommodations including reassignment to vacant positions, unless doing so would impose an undue hardship on the business; and, 3) prohibits retaliation, interference, coercion, intimidation, and harassment against any individual who has engaged in protected activity under the statute.

5.  The FMLA prohibits the County from discriminating and retaliating against or interfering with Mr. Rutledge for exercising his medical leave rights under that law.  Plaintiff alleges the County violated the FMLA, in that: (1) Plaintiff engaged in a protected activity; (2) the County took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.

6.  Kansas law prohibits employers from discharging an employee for a good faith report or threat to report a serious infraction of rules, regulations, or law pertaining to the public health, safety, and the general welfare by a co-worker or employer (i.e., "whistleblowing") - recognizing such to be in clear contravention of public policy; and, as an exception to the at-will employment doctrine, an employee so discriminated or retaliated against may bring suit against his employer.

7.  Plaintiff alleges that: a) he made repeated reports of acts, conduct, and practices which he reasonably and good faith believed could and did involve serious violations of law, County and other safety requirements, rules, policies, and procedures, and were otherwise improper and which pertained to the public health, safety and general welfare; b) Defendant County had knowledge of these reports; c) Defendant County terminated Mr. Rutledge's employment; and, d) there is a causal connection between Mr. Rutledge's protected activity or reports and his termination.

8.  The acts, conduct, and practices which form the basis for this action have resulted in the County discriminating against and harassing Mr. Rutledge on the basis of his disabilities with respect to the terms, conditions, and privileges of his employment; and, the manner in which the County has failed to redress this and comply with its related legal obligations and follow its own related written rules and procedures has resulted in prohibited disability, medical leave, workers' compensation retaliation, harassment, a hostile environment, and retaliation. The related acts,

conduct, and practices of the County are a violation of the ADA (as amended), the FMLA, Title VII, and Kansas law.

9.   This unlawful conduct of the County created and furthered a hostile environment which interfered with Mr. Rutledge's ability to perform his job and resulted in his being exposed to a threatening, hostile, and dangerous workplace and which exacerbated his disabilities and workplace injuries and his emotional distress, fear, anxiety, and trauma.

10. The County had a duty to take prompt, remedial, corrective action to address the repeated acts of harassment and hostile environment that Plaintiff was subjected to and the County failed to do so.

11. The County's unlawful conduct demonstrates an ongoing pattern of a failure to respond to incidents of harassment and a hostile environment, with regard to Plaintiff and others, and shows malice and a reckless indifference and disregard for the rights and safety of Mr. Rutledge and other County employees.

12. The County has a practice and policy of condoning and creating an environment which fosters and allows disability and other forms of discrimination, harassment, and a hostile environment.

13. The County's failure and refusal to address Plaintiff's requests for accommodation and related complaints were also taken out of retaliation for his complaining about or reporting the unlawful conduct he was subjected to. The County's conduct was specifically designed to dissuade and deter Mr. Rutledge and others from making reports or complaints about the unlawful conduct they were subjected to.

14. The County's asserted reasons for its conduct are blatantly untrue and a pretext for its unlawful conduct and perpetuated and condoned the discrimination, harassment, hostile environment, and retaliation which occurred with Plaintiff and others.

15. The County has a policy or practice that requires the County and its managers and supervisors to unlawfully discriminate and retaliate against any of its employees who report or complain of unlawful, unsafe, unethical, and/or otherwise improper acts, conduct, or practices engaged in by the County and otherwise unlawfully harass, intimidate, threaten, and interfere with its employees seeking to exercise their rights under related laws.

16. In violation of the ADA, as amended, the FMLA, and Title VII, and Kansas law, the County has repeatedly and continuously retaliated against Mr. Rutledge for engaging in related protected activity, including, but not limited to, seeking accommodation, exercising his workers' compensation rights, seeking and taking related leave, reporting unlawful conduct of County employees, and his complaining of or reporting the unlawful conduct he was subjected to; and, this amounts to further harassment and perpetuated the hostile environment Mr. Rutledge was subjected to and had to endure.

17. Furthermore, in flagrant violation of Title VII, other retaliation law, and Kansas public policy, the County has retaliated against Mr. Rutledge for his participation in and testimony given against the County and certain of its employees in earlier litigation.

18. Given the unlawful conduct and emotional strain he was subjected to at the County, as well as the County's refusal to address such, no reasonable person in Mr. Rutledge's situation would be expected to continue in such an environment; yet, unable to force him to resign, the County terminated Mr. Rutledge for utterly pretextual reasons.

## PARTIES

19. Plaintiff is a fifty-six (56) year old white male and a resident of Olathe, Kansas. Mr. Rutledge was a devoted, loyal, and productive employee of Johnson County for over a decade with no disciplinary issues and only positive reviews – up until the time just prior to the County deciding to fire him. Mr. Rutledge's positions while at the County included that of a line cleaning and inspection crew member within the Wastewater Department and, later, that of truck driver since September 2009. Mr. Rutledge was more than qualified for and satisfactorily met the legitimate job expectations for his positions. However, Mr. Rutledge was repeatedly subjected to discrimination, a hostile environment, and retaliation during his employment with the County. This is part of the widespread discriminatory, retaliatory, and dangerous and hostile work conditions at the County and in the Wastewater department Mr. Rutledge worked in. This is an ongoing pattern and practice of unlawful conduct at the County which it is fully aware of, condones, and has carried out for years.

20. Defendant Johnson County Board of County Commissioners, comprised of seven members, is the chief governing and policy-making body of or for Johnson County, Kansas. The County is a governmental entity organized and created pursuant to and under the laws of the State of Kansas and was and is established to carry out State prescribed functions at the local level. There are 5 agencies and 34 departments with more than 3,800 employees in Johnson County Government. Wastewater is a County department that operates under the direction of the Board.

21. Defendant County is one of the largest governmental entities within the State of Kansas. The County's main office is located at 111 S. Cherry St., Suite 3300, Olathe, Kansas 66061. At all relevant times, Defendant has maintained offices and facilities and conducted

substantial governmental and related activities in Johnson County, Kansas, and continuously been an entity subject to the Kansas and Federal law at issue herein.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over the Federal law claims herein, pursuant to 28 U.S.C. §§ 1331 and 1343.

23. This Court has jurisdiction over the Kansas law claims herein, pursuant to 28 U.S.C. § 1367.

24. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and (c). The unlawful employment acts, conduct, policies, and practices set forth herein occurred and continue to occur in this District, where Defendant has multiple facilities, employees thousands of individuals, and transacts substantial and ongoing business, where Mr. Rutledge worked and lives, where the unlawful conduct and damages at issue originated and occurred, and where the unlawful employment acts, conduct, policies, and practices remain in effect in continuous, systemic violation of the respective statutes and law.

25. At all times relevant to this action Defendant has been an entity and an employer subject to the laws, rules, and regulations at issue herein.

26. Plaintiff filed a charge of discrimination against the County with the Equal Employment Opportunity Commission ("EEOC") on April 12, 2019. The claims of discrimination, harassment, hostile environment, retaliation, and the other unlawful acts, conduct, and practices set forth within that charge and arising out of and related to that therein are included with this Complaint.

27. Plaintiff received a Notice of Right to Sue from the EEOC with respect to said charge dated October 9, 2019; this action is brought within 90 days of the issuance of said Notice of Right to Sue.

28. Plaintiff has exhausted all of his administrative remedies with the EEOC.

29. Plaintiff timely and properly submitted a notice of claim to the Clerk of the Johnson County Board of County Commissioners on April 12, 2019, pursuant to K.S.A. § 12-105b, with respect to the tort law claims herein. This claim notice was hand delivered and receipt of such by the County was and has been acknowledged. No response or denial, in whole or part, has been received by Plaintiff or his counsel from the County or any representative thereof within 120 days of the service and delivery of said claim notice. Thus, pursuant to K.S.A. § 12-105b(d) and the Kansas Tort Claims Act, Plaintiff has satisfied any and all statutory claim notice requirements with respect to his state law tort claim herein prior to the filing of this suit.

30. Mr. Rutledge has fully complied with any and all prerequisites to jurisdiction in this Court under the ADA, as amended, Title VII, the FMLA, Kansas and related law.

## FACTUAL STATEMENT AND ALLEGATIONS

31. Mr. Rutledge is a fifty-six (56) year old white male.

32. He began working at Johnson County in the Wastewater Department in April 2005.

33. He held his most recent position of truck driver since September 2009.

34. Formerly, Mr. Rutledge was a line cleaning and inspection crew member within the Wastewater Department.

35. During his employment with the County, Mr. Rutledge sustained a number of workplace injuries.

36. In connection with such, he filed injury reports and/or workers' compensation claims on or around the following dates: October 22, 2018; July 20, 2018; April 20, 2017; April 7, 2017; and, February 19, 2017.

37. Mr. Rutledge also took related and other leave for health reasons covered by FMLA and otherwise on or around the following dates: April 20, 2017 and July 20, 2018.

38. And, on February 15, 2018, Mr. Rutledge received approved leave for the period of January 1, 2018 through December 31, 2018 of 5-10 times per month, lasting 1-3 days each; along with an approved work schedule of 3-5 days a week to the extent FMLA leave was available.

39. During his employment with the County, Mr. Rutledge made a number of reports regarding workplace safety, including the following: the unsafe condition of the truck he was driving; the tires of his truck in unsafe condition; and, a license plate light on his truck out.

40. Mr. Rutledge also made reports to the County of employees not working, but, receiving pay (i.e., on the clock, but, not working, yet, getting paid). And, he made these reports in November 2019, just prior to his getting fired, and, earlier, throughout 2019.

41. Mr. Rutledge gave testimony in an earlier lawsuit against the County. This included deposition testimony in August of 2010 and trial testimony in June of 2011.

42. Related, Mr. Rutledge also made complaints of his being bullied and harassed in late 2008 and early 2009.

43. Mr. Rutledge has received unfavorable work assignments that are not compatible with his disabilities and related restrictions. One such incident involved his being forced to work with a ladder that was too heavy.

44. The County is fully aware of Mr. Rutledge's restrictions related to his health condition and disabilities. This includes lifting and push/pull restrictions the County received on or about August 6, 2018.

45. Mr. Rutledge has never been told to go to or approached by Human Resources regarding the ADA or to discuss accommodations regarding his disabilities, health condition, or his restrictions.

46. Plaintiff – Mr. Rutledge – has been unlawfully discriminated and retaliated against and subjected to severe and pervasive harassment – discriminatory and retaliatory – by his former employer, Johnson County, Kansas (the "County"), in violation of Federal and Kansas law, including the ADA and Title VII.

47. This unlawful conduct was continuous and ongoing and part of a pattern or practice of like and related conduct and can be attributed to a combination of factors, including Mr. Rutledge's disabilities, as well as in retaliation for his engaging in protected activity, including reports or complaints to his former employer and written, deposition, and trial testimony which he provided in connection with a Federal District Court trial that took place in June 2011 (*Palmerin v. Bd. Co. Comm., Johnson Co., Ks.*).

48. *Palmerin* was a wrongful termination case which involved allegations against the County of, among other things, racial discrimination and retaliation for reports of the same; and, Mr. Rutledge's reports and complaints to the County and testimony specifically addressed the County engaging in discriminatory, retaliatory, and other unlawful conduct.

49. And, several of the individuals Mr. Rutledge testified against – and, which the evidence clearly showed to have engaged in unlawful conduct – are still employed by the County

and were involved in the decision to fire Mr. Rutledge and have "friendly" relationships with each other.

50. The harassment and discriminatory and retaliatory conduct Mr. Rutledge was subjected to was severe and pervasive and resulted in a hostile environment which was intended to force him to resign or quit his employment.

51. This interfered with Mr. Rutledge's ability to perform his job; however, he attempted in good faith to try and did perform his duties.

52. So, instead, the County terminated Mr. Rutledge's employment on or around December 6, 2018, pretextually asserting behavioral problems – of the very kind he had just reported to management and HR regarding another employee.

53. Prior to this, Mr. Rutledge had never been accused of any such conduct. But, those involved in his termination were individuals he had previously complained about and were "friendly" with those in management.

54. Also, it is ironic that Mr. Rutledge was terminated for allegedly not working while "on the clock" – in that Mr. Rutledge had just prior to his termination made reports of a colleague repeatedly sitting in the break room while supposed to be working and being paid for such.

55. And, then, after this, Mr. Rutledge – contrary to his usual work routine – was told by his manager one morning to wait in the break room, rather than go out and start his duties.

56. Shortly thereafter, Mr. Rutledge was then confronted by his supervisor and asked what he was doing in the break room rather than working.

57. He was then fired for this and told he could not be trusted.

58. Again, this was the very thing Mr. Rutledge reported regarding another employee.

59. Thus, the County, as it has repeatedly done in the past with others, fired him for one of the very issues Mr. Rutledge reported.

60. Also, what Mr. Rutledge reported was, in fact, a violation of law and County policy and involved theft of taxpayer monies (i.e., employees being paid for not working).

61. And, again, the individual Mr. Rutledge reported happened to have a "friendly" relationship with management.

62. Those County employees involved in Mr. Rutledge's unlawful termination had full knowledge of Mr. Rutledge exercising his workers' compensation and other related rights, as well as his reports of what he in good faith perceived to be unsafe working conditions and unlawful conduct.

63. Likewise, these individuals took part in and/or had significant influence with respect to the related decisionmaking process.

64. Mr. Rutledge served as a very productive and loyal employee of Johnson County Wastewater for over a decade; he consistently displayed genuine concern for a safe and responsible work environment and the lawful treatment of his colleagues.

65. During Mr. Rutledge's employment with the County, including during 2018, 2017, and prior, he sustained a number of workplace related injuries for which he was lawfully entitled to respective relief under workers' compensation law.

66. And, related, he also exercised his leave rights under the FMLA and sought reasonable accommodations pursuant to the ADA.

67. Also, during his employment, Mr. Rutledge became aware of a number of unlawful, unsafe, and improper acts and practices of the County and certain of its employees, including: safety violations, discrimination, harassment, destruction of property, and theft.

68.  Kansas and other law expressly prohibit theft, fraud, conversion, theft by deception, misuse of government resources, and false income tax reporting by employers and individuals.

69. These laws are of the utmost concern and seriousness.

70. This is the public policy of the State of Kansas.

71. Mr. Rutledge made reports or complaints of conduct which violated these laws and the County was fully aware of such.

72. The individuals involved in firing Mr. Rutledge were fully aware of his related reports and complaints.

73. Likewise, the County, including Mr. Rutledge's manager and supervisor, were fully aware of his disabilities and related health condition and impairments and his repeated requests for accommodation.

74. Mr. Rutledge's disabilities include: damaged vertebrae in his neck; both rotator cuffs torn; and, badly herniated vertebrae in his lower back.

75. He has had multiple surgeries for certain of these and still requires treatment.

76. These conditions were brought about due to work place injuries with the County.

77. As such, the County is fully aware of these disabilities.

78. These have resulted in a substantial impairment of one or more major life activities, including: sleeping, walking, lifting, pushing and pulling, concentration, thinking, standing, and working. These limit or keep Mr. Rutledge from performing certain routine activities, such cutting his yard, car work (involving crawling, bending, and leaning), mopping, sweeping, and vacuuming. Repeated or sustained raising of his arms is difficult. And, all of these disabilities reduce his mobility.

79. The County is well aware Mr. Rutledge has had to take leave in connection with these disabilities.

80. And, as noted, Mr. Rutledge has been threatened and harassed for this.

81. The County is also clearly aware of these disabilities, impairments, and related restrictions as they have been provided with this information from Mr. Rutledge's doctors and have made several changes to his jobs.

82. One such instance was changing the length of the pipe used in order to reduce the weight.

83. Yet, again, in connection with Mr. Rutledge's disabilities and related leave, he was subjected to repeated abuse, harassment, and ridicule; *including being expressly told no accommodations would be made*.

84. Mr. Rutledge is a qualified individual with a disability who performed the duties of his job – and, beyond - with or without accommodation.

85. The discriminatory and retaliatory treatment Mr. Rutledge was subjected to was continuous and took place over a period of years and became steadily worse.

86. This culminated with his termination in December of 2018, allegedly based on his refusing to go to work, and, rather, staying in the break room; and, also, claiming Mr. Rutledge lied about that.

87. That is an outright fabrication. And, ironically, Mr. Rutledge had just reported another employee engaging in that very conduct to his manager and others.

88. Particularly, given Mr. Rutledge's past efforts and the many positive contributions he had made to the County, this was very upsetting, humiliating, demeaning, and offensive.

89. In combination with his previous treatment, Mr. Rutledge believed the County wanted him gone and, unable to force him to resign, he was eventually terminated for pretextual reasons.

90. Again, Plaintiff believes that the discrimination, retaliation, and harassment he has been subjected to is because of his disabilities and seeking and asserting related rights, related complaints and reports to management and HR, as well as his participation in the earlier litigation against the County involving issues of overt race discrimination and retaliation.

91. There are other County employees who have not engaged in the protected conduct Mr. Rutledge has and who have not complained to or testified against the County and who were not subjected to this adverse treatment and were treated more favorably.

92. An overview, not all inclusive, of various events and approximate dates and demonstrating some of the discriminatory and retaliatory and other unlawful conduct and treatment Mr. Rutledge was subjected to and observed, includes the following:

93. In December 2008, Mr. Rutledge submitted complaints to management and HR regarding a variety of discriminatory, retaliatory, and other unlawful acts by the County and certain employees.

94. Then, in June 2011, and prior to that, Mr. Rutledge gave deposition and trial testimony in a Kansas Federal District Court case in which he specifically accused the County and various managers – as well as the County's attorney and those in Human Resources – of engaging in, ignoring, and lying about discrimination and retaliation that he had witnessed, experienced, and reported.

95. During Mr. Rutledge's employment with the County, including during 2018, 2017, and prior, he sustained a number of workplace related injuries for which he was lawfully entitled to respective workers' compensation relief.

96. And, related, Mr. Rutledge also exercised his leave rights under the FMLA and sought reasonable accommodations pursuant to the ADA.

97. During this time, Mr. Rutledge was repeatedly and openly harassed, admonished, and threatened by County supervisors and managers for exercising his related rights.

98. This includes one of Mr. Rutledge's supervisors, Mr. Jeremy McCracken, telling other employees not to interact with and ignore Mr. Rutledge.

99. Mr. McCracken also made a number of overtly discriminatory and retaliatory statements to Mr. Rutledge.

100. This includes, but, is not limited to, telling Mr. Rutledge ***"tough shit!"*** regarding his lifting restrictions.

101. And, Mr. Rutledge being told by Mr. McCracken, ***"no FMLA leave!"***

102. Also, after Mr. Rutledge would return from lawful leave, being told, ***"you're not supposed to be taking time off; you need to be back here!"***

103. Consistent with this, none of Mr. Rutledge's supervisors or managers or anyone from the County engaged in the ADA's good faith interactive process; just so, the ADA has never been mentioned with Mr. Rutledge even though he clearly sought accommodations for his disabilities, impairments, and restrictions.

104. And, Mr. Rutledge being forced to work without accommodation and not receiving the care and treatment for such exacerbated these disabilities and impairments and resulted in further personal physical injury and pain and suffering.

16

105.  Also, just prior to Mr. Rutledge's termination, he had been in contact with both the Wastewater Superintendent and the County's human resources department to address the unlawful manner in which he was being treated by his superiors and colleagues.

106.  Not unrelated, it is important to realize that in the prior litigation against the County that Mr. Rutledge was involved with, the County Human Resources department had repeatedly fabricated investigations, investigation reports, and related correspondence.

107.  Likewise, in that earlier litigation against the County, HR manager Tiffany Hentschel was repeatedly found to have lied about a variety of matters, as was fully demonstrated in the related trial, with her testimony and that of others, in addition to documentary evidence fully corroborating such.

108.  In addition, several individuals with the County have openly admitted that the manner in which Mr. Rutledge has been treated is improper and unlawful.

109.  This includes one of the County appeal panel members, a sheriff, asking why Mr. Rutledge needed to be fired.

110.  Also, HR principal Leslie Fortney telling those present at the time of Mr. Rutledge's firing that, "this is not right."

111.  Noteworthy, too, is that HR manager Tiffany Hentschel told Mr. Rutledge that the County would pay for whatever medical treatment he needed for his workplace injuries.

112.  The reasons given by the County for Mr. Rutledge's termination are blatantly pretextual.

113.  The related County appeal hearing was nothing but a "rubber stamp" and a cover-up, as demonstrated by, among other things, its utter disregard of and refusal to hear any testimony from individuals who were to provide favorable testimony on Mr. Rutledge's behalf.

114.   Also, significant, is that one of the individuals in the earlier lawsuit Mr. Rutledge testified and participated in, Mr. Kevin Boggs, and who was therein repeatedly found to have engaged in overtly racially discriminatory conduct of which the County was fully aware, is still employed by the County and is friends with Wastewater manager Mr. Kenny Kellison.

115.   In fact, Mr. Boggs has actually performed major car repairs for Mr. Kellison.

116.   And, Mr. Kellison's related correspondence regarding Plaintiff's termination, the alleged reasons for such, and what he falsely accuses Plaintiff of are an outright fabrication.

117.   The County has an unlawful practice or policy of discriminating against its minority and disabled employees, as well as engaging in other forms of prohibited discrimination.

118.   The County has a long history of harassment and retaliation and County management, including HR, condoning such.

119.   The County has written policies wherein the County claims to prohibit the unlawful discrimination, harassment, and retaliation Mr. Rutledge has been subjected to.

120.   The County requires its employees to report certain types of conduct which they believe in good faith to be improper or unlawful.

121.   The County has written policies that expressly state the County will not retaliate against an employee making any such report and any such retaliation is prohibited and grounds for termination.

122.   The County has failed to provide Mr. Rutledge with any lawful or legitimate reason for the discriminatory and retaliatory conduct he has been subjected to by the County.

123.   Those purported reasons, if any, the County has ostensibly asserted for its unlawful treatment of Mr. Rutledge are untrue, contradictory, not believable, and wholly pretextual.

124.  Likewise, the County's failure to respond to Mr. Rutledge's unlawful treatment is contrary to law and its own written policies.

125.  The County is fully aware the discrimination, harassment, and retaliatory acts, conduct, and practices Mr. Rutledge has been subjected to are unlawful.

126.  The unlawful manner and fashion in which Mr. Rutledge was treated by the County was deliberate, intentional, and outrageous, carried out willfully, wantonly, and maliciously, ongoing and continuing in nature, and is part of an unlawful County-wide policy, pattern, and practice demonstrating malice and reckless indifference towards Mr. Rutledge and others like him and/or similarly situated and warrants an award of punitive damages in a reasonable sum to be determined by a jury.

## COUNT I:

## DISABILITY DISCRIMINATION & HARASSMENT & HOSTILE ENVIRONMENT
### (in Violation of the ADA, as amended)

127.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

128.  During his employment with Defendant, Plaintiff was subjected to unfavorable terms, conditions, and privileges of employment contributed to or in part because of Plaintiff's disabilities.

129.  Defendant continuously and repeatedly ignored and failed to respond to Plaintiff's requests to address and remedy this.

130. This discriminatory treatment was ongoing, continuous, repeated, severe, and pervasive and thereby created a hostile environment.

131.  This discriminatory treatment and hostile environment interfered with Plaintiff's ability to effectively do his job and was intended to force Plaintiff to resign and he reasonably felt compelled to do so.

132.  The actions of Defendant were malicious, outrageous, calculated toward Plaintiff, or were taken in reckless disregard of Plaintiff's statutory rights, and as such, constitute violations of the ADA, as amended.

133.  Plaintiff has suffered substantial damages due to Defendant's unlawful employment practices, including Defendant's violation of the ADA, as amended.

134.  Plaintiff is entitled to punitive damages in such amount as the jury deems fair, reasonable, and sufficient to punish Defendant and deter Defendant and others from like conduct.

135.  Under the ADA, as amended, if Plaintiff prevails, he is entitled to recover all costs incurred herein, including reasonable attorneys' fees and all other costs and expenses of litigation.

136.  Plaintiff also seeks prejudgment interest on all actual damages found by the jury to be due and owing through the date of trial.

137.  As a direct and proximate result of Defendant's violation of the ADA, as amended, Plaintiff has sustained significant damages in the form of economic and attendant emotional damages, including lost wages, benefits, expenses, and related health care.

138.  As a result of the unlawful acts and conduct of Defendant County, as described in part herein, by and through and in concert with its individual managers and other employees, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees,

the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

### COUNT II:

### RETALIATION
### (in Violation of the ADA, as amended)

139.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

140.  Mr. Rutledge, by virtue of his protected activity, including his requests for accommodation and his internal complaints and reports, has participated in protected activity and opposed any practice made an unlawful employment practice by the ADA, as amended, and related law.

141.  The County had knowledge of and was fully aware that Mr. Rutledge sought accommodation and he opposed his unlawful treatment and the discriminatory and retaliatory treatment he has been subjected to by the County.

142.  Mr. Rutledge has been subjected to repeated and ongoing acts, conduct, and practices by the County which were intended to and would easily dissuade an individual from engaging in this protected conduct.

143.  The retaliatory conduct Mr. Rutledge has been subjected to resulted in a material adverse change in the terms and conditions of his employment; and, it was intended to and would easily dissuade one from engaging in protected conduct or complaining about the unlawful conduct.

144.  There is a causal connection between Ms. Rutledge engaging in this protected conduct and the retaliatory and other unlawful acts, conduct, and practices of the County he has been subjected to.

145.  As a result of the unlawful acts and conduct of Defendant County, as described in part herein, by and through and in concert with its individual managers and other employees, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## COUNT III:

## FMLA DISCRIMINATION AND RETALIATION
### (in Violation of the FMLA)

146.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

147.   Mr. Rutledge, by virtue of his protected activity, including his leave and requests for leave under the FMLA, has participated in protected activity pursuant to the FMLA and related law.

148.  The County had knowledge of and was fully aware that Mr. Rutledge sought and had taken permitted FMLA leave.

149. Mr. Rutledge has been subjected to repeated and ongoing acts, conduct, and practices by the County which were intended to and would easily dissuade an individual from engaging in this protected conduct.

150. The discriminatory and retaliatory conduct Mr. Rutledge has been subjected to resulted in a material adverse change in the terms and conditions of his employment; and, it was intended to and would easily dissuade one from engaging in protected conduct or complaining about the unlawful conduct.

151.  There is a causal connection between Ms. Rutledge engaging in this protected conduct and the discriminatory and retaliatory and other unlawful acts, conduct, and practices of the County he has been subjected to.

152.  As a result of the unlawful acts and conduct of Defendant County, as described in part herein, by and through and in concert with its individual managers and other employees, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## COUNT IV:

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY – WORKERS' COMPENSATION RETALIATION (in Violation of Kansas Common Law)

153.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

154.  Plaintiff sustained work related injuries arising out of and during the course of his employment for the County for which he could and did file claims for workers' compensation benefits.

155. The County has knowledge of Mr. Rutledge's related injuries and his related workers' compensation claims.

156.  The County terminated Mr. Rutledge's employment and subjected him to repeated acts of discrimination, retaliation, harassment, and intimidation because of the work related injuries and his related workers' compensation claims.

157.  As a result of the unlawful acts and conduct of Defendant County, as described in part herein, by and through and in concert with its individual managers and other employees, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## COUNT V:

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY – WHISTLEBLOWER RETALIATION
### (in Violation of Kansas Common Law)

158.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

159.  Under the whistleblower public policy exception to the at-will employment doctrine, termination of an employee, in retaliation for good faith reporting of a co-worker's or employer's serious infraction of rules, regulations, or law pertaining to public health, safety, and general welfare, is an actionable tort.

160.  Mr. Rutledge made repeated good faith reports of acts, conduct, and practices engaged in by Defendant County and certain of its employees which he reasonably and in good faith believed and were serious, unlawful, unsafe, and improper and involved conduct pertaining to the public health, safety, and welfare and that of his colleagues and others.

161.  Mr. Rutledge engaged in activity protected by Kansas and other law through his reports.

162.  After making these reports or engaging in this protected activity, Mr. Rutledge was unlawfully discriminated and retaliated against by Defendant County, culminating in his employment being terminated.

163.  Defendant County had knowledge of Mr. Rutledge's reporting prior to terminating his employment.

164.  A causal connection exists between Mr. Rutledge's protected activity or reports and Defendant County terminating his employment.

165.  Mr. Rutledge was terminated in retaliation for making these reports.

166.  As a direct and proximate result of the unlawful acts and conduct of Defendant County, as described in part herein, by and through and in concert with its individual managers and other employees of the County, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial. Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## COUNT VI:

## PROHIBITED RETALIATION FOR ENGAGING IN PROTECTED CONDUCT - TESTIFYING IN EARLIER DISCRIMINATION LAWSUIT (in Violation of Title VII)

167.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

168.  Mr. Rutledge engaged in protected activity under Title VII.

169.  Mr. Rutledge suffered an adverse employment action.

170.  There is a causal connection between Mr. Rutledge's protected activity and the adverse employment action.

171.  As a result of the unlawful acts and conduct of Defendant County, as described in part herein, by and through and in concert with its individual managers and other employees, plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

i)  That after jury trial, Defendant County be ordered to make Plaintiff whole by providing appropriate back pay and benefits with prejudgment interest, in amounts to be proved at trial;

ii)  That after jury trial, Defendant County be ordered to make Plaintiff whole by providing appropriate front pay and benefits, in amounts to be proved at trial;

iii)  That after jury trial, Defendant County be ordered to remove and expunge, or cause to be removed or expunged, all negative, discriminatory, retaliatory, and/or defamatory memoranda and documentation from Plaintiff's record(s) of employment;

iv) That after jury trial, Plaintiff be awarded extraordinary and/or equitable relief as permitted by law, equity, and any and all applicable statutory provisions related hereto;

v)  That after jury trial, Plaintiff be awarded all compensatory, restitutionary, and/or remedial relief;

vi)  That after jury trial, Plaintiff be awarded pre-judgment interest and post-judgment interest, as well as his reasonable attorneys' fees, expert witness fees and other costs; and,

vii)  Plaintiff be awarded such other legal and equitable relief as the Court deems appropriate and just.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

## DESIGNATED PLACE OF TRIAL

Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Dated: January 6, 2020

Respectfully submitted,

 /s/ Fredrick D. Deay, II
Fredrick D. Deay, II    KS Bar No. 15035
LAW OFFICE OF FREDRICK D. DEAY, II
7575 W. 106th Street, No. 14
Overland Park, KS 66212
(913) 649-0687
fddpai2@hotmail.com  email

- *and* -

HOLMAN SCHIAVONE, LLC
Kirk D. Holman Mo#50715
4600 Madison Avenue, Suite 810
Kansas City, MO 64112
TEL: (816) 283-8738
FAX: (816) 283-8739
kholman@hslawllc.com

**Attorneys for Plaintiff Ron Rutledge**